# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

MARGARET MANUEL, )
 )
   Movant, )
 )
v. ) Case No. CV609-045
 ) CR607-013
UNITED STATES OF AMERICA, )
 )
   Respondent. )

## REPORT AND RECOMMENDATION

A beneficiary of her live-in boyfriend's life insurance policy, "Margaret Manuel, a/k/a The Black Widow," decided to hire a hit man to kill him. Doc. 6 at 1.[1] Unsavvy at that, she wound up negotiating with an undercover FBI agent. That led to her indictment on four counts of using a telephone to commission a murder for hire, in violation of 18 U.S.C. § 1958(a). Doc. 6. She pled guilty to one count and the government dropped the other three. Doc. 28. Her plea agreement warned her of the maximum 10-year sentence that she ultimately

---

[1] All record cites are to the CR607-013 file.

received. *Id.* at 1; doc. 27; doc. 35 at 25.

Manuel then appealed, doc. 29, her lawyer filed an *Anders* brief, and the appeals court accepted it, thus dismissing her appeal as baseless. Doc. 37. She now moves this Court for 28 U.S.C. § 2255 relief. Doc. 40. In her reply to the government's opposition brief, doc. 42, she has filed only a "Notice of Intent to Appeal." Doc. 43.

In Ground One, Manuel contends that her trial lawyer was ineffective for failing to request a competency hearing and, at sentencing, failing to present her boyfriend's mitigation testimony (for despite her efforts to have him "whacked," he decided to continue the relationship[2]). Doc. 40 at 4. In Ground Two, she claims "Prosecutorial Misconduct" because the prosecutor failed to "allow" her boyfriend's testimony.[3] *Id.*

---

[2] From the sentencing transcript:

> [PROBATION DEPARTMENT]: That is correct, Your Honor. When I interviewed the victim, he basically said he intended to continue his relationship [with Manuel].
>
> THE COURT: That is what you reflected. Well, every relationship has it[s] strangeness.

Doc. 36 at 12.

[3] This is denied outright as frivolous on its face. There is no duty imposed on prosecutors to "allow" victims to be heard at sentencing. Defense counsel call

Ground Three faults the "District Court" for failing to order a competency evaluation, and for failing to allow her boyfriend's testimony. *Id.*

Applying the ineffective assistance standards[4] to Ground One, counsel cannot be found ineffective because, under governing mental-competency standards,[5] the competency portion of the claim is

---

mitigation witnesses, not prosecutors.

[4] To establish ineffective assistance of counsel, Manuel must show both that her counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[5] *See Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (as a substantive claim, it is unwaivable and thus can be reached on a § 2255 motion, but the movant must present clear and convincing evidence creating a real, substantial doubt about her competence to stand trial; the standard of proof is high, and the facts must positively, unequivocally, and clearly generate legitimate doubt). The case law shows that this is essentially the same standard applied on direct appeal. *United States v. Pinson*, 584 F.3d 972, 975-76 (10th Cir. 2009) (rejecting, on the merits, claim that incompetency at time of guilty plea hearing rendered defendant's guilty plea invalid); *United States v. Evans*, 332 F. App'x 561, 562 (11th Cir. 2009) (sufficient evidence supported determination that defendant was competent to be sentenced for threatening use of weapon of mass destruction, mailing threatening communication, and assaulting federal officer, despite expert's concern that, if given opportunity to allocute, defendant would reveal delusional beliefs; defendant understood proceedings, why he was there, and history of his case, and expert report indicated that defendant understood nature of case, potential consequences of proceeding, and roles of individuals involved); *United States v. Smith*, 212 F. App'x 922, 924 (11th Cir. 2006) (defendant was competent to enter guilty plea to presenting false claim to Internal Revenue Service; she was psychologically evaluated and found competent to stand trial, defense counsel stated that he was satisfied that she was competent to stand trial, and she rationally discussed proceedings with counsel and understood nature of proceedings); Ann., 31 A.L.R. FED. 375 (1977).

meritless. The only evidence that Manuel cites to show mental incompetency is just one passage (italicized below) from the sentencing transcript:

> THE COURT: Ms. Manuel. . . . [i]t seems to me that the undercover agents gave you every opportunity to renounce or withdraw from this hiring of what you thought was an assassin to murder your [boyfriend]. But you, first of all, said that you wanted him hit with a car so it would look accidental and you would recover double indemnity. But then you changed your mind, because you said if that were not fatal, then you would have to look after him. The undercover agents or operatives, whomever they were, and all of this is pretty well spelled out in recordings, gave you every opportunity to withdraw from this dastardly scheme. Now, do you have anything to say or any information in mitigation of sentence?
>
> DEFENDANT: Yes, Your Honor. Well, at the time I was pretty distraught because my son had just got killed.
>
> THE COURT: I'm sorry.
>
> DEFENDANT: *At the time, I was a little bit mixed up, because my son had just got killed. And I accepted -- I went through everything. Because I was -- my baby had just got died September 6th. So I had a lot on me at the time, and really I didn't understand a lot. But I accepted responsibility. I go through the responsibility, but at the time, I didn't understand everything. Because I was in the middle of his death, you know, death sentiments, and still is, you know. That's all I have to say right now. And I'm sorry, you know, for any action that I took place in it....*

Doc. 36 at 10-11 (emphasis added). Especially when viewed within the full context of her earlier, Fed. R. Cr. P. 11, plea-change hearing, this

4

showing is simply insufficient. Indeed, during that hearing the judge asked her:

> Q Have you ever been treated for any mental illness?
>
> A No, sir.
>
> Q Has anyone ever diagnosed you or said that you had some mental problems or mental illness?
>
> A No, sir.

Doc. 35 at 8. He then elicited from her the fact that she was now 49 and because of her son's murder she had been, and was presently, taking anti-depressant medication. *Id.* at 9-11. However, this was her first time on such medication, and she had no prior history of major depression. *Id.* Nor was she an alcoholic. And, while she been using crack cocaine for the past 7 years, she had been off of it in the preceding several months while detained. *Id.* At the end of that inquiry the judge asked her some wrap-up questions:

> Q. All right. Now, you've not had any alcoholic beverage or any drugs other than that disclosed to me since you've been arrested; have you?
>
> A. No, sir.
>
> Q. So you clearly understand where you are today?

> A. Yes, sir.
>
> Q. Why you are here, and you are able to talk to your lawyer and converse with him; are you not?
>
> A. Uh-uh.
>
> Q. Now you understand this is the very important or significant day in your life.
>
> A. Yes, sir.

Doc. 35 at 11. Manuel's counsel concurred:

> With leave of Your Honor, I prepared, I met most recently yesterday afternoon with Ms. Manuel. And I did so because, one, I knew of the hearing today, and thought I needed to visit with her and satisfy her concerns. And second, because I knew that she was grief stricken, and was taking Elavil and Paxil, and while I have absolute ignorance about neuro medicine, I thought I owed it to her and to myself to be sure that I thought she was cognizant of what was going to happen today. And I state in my place that I am satisfied, as a lay person, given my level of ignorance about such things, that she is quite aware of the charges against her, and notwithstanding that she is grief stricken, and notwithstanding that she has had to deal with that grief over a period of 45 days in jail without the support of family and friends, I am nonetheless satisfied that today she is mentally competent. As a lay person, I share that with the Court.

Doc. 35 at 21-22. The judge then rendered his competency-based findings:

> THE COURT: The defendant has been tearing up occasionally. But having observed her, I see no physical difficulty. Her appearance and her alertness and her awareness have been entirely appropriate.

6

The answers she has made shows that she is fully significant [sic] of the importance of this proceeding. I find that she is in full possession of her faculties. I do believe that her condition, that is, her tearing up and emotional problems is a result of the loss of her son. Other than the medicine she describes, she is not under the influence of any other medicine. She has not used any drugs for a period of time or alcohol, because she has been in incarcerated. With all of those noted, I find that she is in *full possession of her faculties*. She is able to confer with counsel. She understands the substance and meaning of the charges. She has had the stabilized influence of a sister who has been an intermediary, and also is here today, and with whom counsel can rely upon. She understands the consequences of her plea.

Doc. 35 at 35 (paragraph spacing omitted; emphasis added). Summarizing his findings, the judge asked whether Manuel disagreed:

[THE COURT] [T]he defendant has the intelligence and *competence* to make the decision she has made. She has offered her plea as a matter of her own free choice. She has considered all of the options that were available. I find that she has not been coerced into offering to plea. Rather, she is offering the plea freely and voluntarily. Ms. Manuel, these are called findings. If I have misspoken, help me correct it. Is there anything I had said that is in error?

DEFENDANT: *No*, sir.

Doc. 35 at 36 (emphasis added). Near the conclusion of the Rule 11 proceedings Manuel spoke up:

DEFENDANT: Your Honor, could I say something?

THE COURT: Yes.

7

DEFENDANT: I have been very pleased with [defense counsel]. And during the act of my son getting killed, when I was apprehended, I had discussed it with [defense counsel] that I felt like one of my family members was in danger. And my son did come up dead. Okay. And right at this moment, I need some psychiatry help, which I have been asking for, because I have never dealt with this.

Doc. 35 at 45.

Viewed under the governing law set forth *supra* n. 5, these facts show that Manuel has failed to meet her burden. *Battle*, 419 F.3d at 1298-99. Merely adverting to personal tragedy in one's life, claiming to be upset from it and thus wanting to see a mental health professional does *not* place a reasonable judge on notice of mental incompetency, much less demonstrate its existence.

Manuel's remaining claims are facially frivolous.[6] Accordingly, her 28 U.S.C. § 2255 motion (doc. 40) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v.*

---

[6] Her lawyer obviously made a strategic decision *not* to call her boyfriend to the stand. By any objectively reasonable standard this was a prudent decision. The government presented evidence of a cold, calculated, evil crime, including Manuel's insistence that her boyfriend be shot to eliminate the *chance* that she might feel obliged to care for him if he survived a bungled "car-accident" scenario. Presenting evidence of the victim's sadly bizarre allegiance to her would not have been "mitigated" the evil, only compounded it (e.g., it would lead the sentencing judge to surmise that Manuel otherwise exploited a desperate, pathetic personality in other ways). Nor, of course was it the prosecutor's or court's function to adduce defense evidence; that's what *defense* lawyers are for.

*United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED,** this  21st  day of April, 2010.

/s/ *[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA